**IN RE James K. DENARO and Jennifer J. Denaro a/k/a Jennifer J. Bernhard, Debtors**

**15-11352 CLB**

United States Bankruptcy Court, W.D. New York.

Signed August 5, 2016

Michael Weishaar, Esq., 930 Convention Tower, 43 Court Street, Buffalo, New York 14202, Attorney for Debtors

Michael C. D'Aries, Esq., 350 Fifth Avenue, Suite 5330, New York, New York 10118, Attorney for 21st Mortgage Corporation

Albert J. Mogavero, Esq., 110 Pearl Street, 6th Floor, Buffalo, New York 14202, Chapter 13 Trustee

## DECISION & ORDER

Bucki, Chief U.S.B.J., W.D.N.Y.

The present dispute involves a determination of the replacement value of a manufactured home, for the purpose of ascertaining the distribution required to a partially secured creditor under the debtor's Chapter 13 plan.

James and Jennifer Denaro own real property on Riley Street in West Valley, New York. In 2011, they purchased a modular home for installation on that parcel. Contemporaneously, they gave to 21st Mortgage Corporation a security interest in the structure, but not in the underlying real estate. After defaulting on payments due to the lender, James and Jennifer filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 23, 2015. Mr. and Mrs. Denaro initially proposed a plan which would pay to 21st Mortgage Corporation the sum of $18,000 as the value of its collateral, together with a distribution of 5 % on account of the unsecured balance of that creditor's claim.

Meanwhile, 21st Mortgage Corporation filed a proof of claim which asserted a secured liability of $28,844.50. Arguing that the debtor had undervalued the collateral, the creditor also filed an objection to confirmation of any plan that would pay less than the full amount of the outstanding debt.

■ Section 1322(b)(2) of the Bankruptcy Code allows a debtor in Chapter 13 to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." In the present instance, because 21st Mortgage Corporation took a security interest only in the debtor's modular home and not in the real property upon which it was placed, Mr. and Mrs. Denaro may modify the rights of the mortgagee. Without creditor consent, however, in order to retain property that is subject to a security interest, a debtor must propose a plan under which "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such [secured] claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). For purposes of this section, the "allowed amount" of the creditor's secured claim is defined by 11 U.S.C. § 506. In particular, section 506(a)(1) states that "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim."

■ Essentially, section 1325(a)(5) grants a "cram down" power, by which a debtor in Chapter 13 can reduce a secured claim to the value of pledged collateral. In *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Supreme Court resolved a conflict among the circuits and held that this value is defined as replacement value. More specifically, the Court held that in a "cram down" case, "the value of the property (and thus the amount of the secured claim under § 506(a)) is the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* at 960, 117 S.Ct. 1879. This approach was then largely codified in 2005, when section 506 of the Bankruptcy Code was amended to provide that for purposes of Chapters 7 and 13, the valuation of personal property is to be based on its "replacement value." 11 U.S.C. § 506(a)(2).

■ At the initial hearing on confirmation, this court ruled that the debtor was obligated to pay the value of the mobile home to 21st Mortgage Corporation. Because the parties disputed this amount, we directed them to schedule a valuation hearing. In lieu of that hearing, the debtors and creditor have stipulated that the court should determine value based on a review of written appraisals. Both parties have therefore agreed to the admission of their opponent's expert report, and have waived the opportunity to cross examine the opposing witness. Accordingly, we will now consider the two divergent submissions.

On behalf of 21st Mortgage Corporation, counsel has presented an appraisal report prepared by a remarketing manager for that lender. Without explanation, the report states that the structure has a base value of $30,900. The author then opines that this base value should be reduced by the cost of necessary repairs in the amount of $2,500, but should be increased by the cost of delivery and setup in the amount of $9,100. After applying these adjustments, the report calculates the total replacement value of the property at $37,500.

The debtor's counsel has submitted a Residential Broker Price Opinion from Cash Realty & Auctions LLC. This report considers three comparable sales of modular homes. After adjusting for the age and size of each comparable, the author calculates an "adjusted sales price" of $18,900 for the first comparable, $22,000 for the second comparable, and $27,000 for the third comparable. Then, without further explanation, the report concludes that the property has a current value of $19,500. The debtor's appraisal makes no adjustment for the cost of delivery and setup.

■ As between the two competing appraisals, more than half of the difference in value derives from the lender's upward adjustment for the cost of delivery and setup. This approach contradicts the guidelines of 11 U.S.C. § 506(a)(2), which states:

> "If a debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing. With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."

Making no suggestion of an adjustment for delivery or setup, this statute defines replacement value as the price that a retail merchant would charge for like property. Although the user might still need to incur additional costs after his or her purchase, replacement value is set as the price that the seller would charge. In reaching this conclusion, we note a difference between replacement value and replacement cost. Set up and delivery charges may factor into the cost of replacement, but for purposes of plan confirmation, the court must instead determine replacement value. As defined by section 506(a)(2), the replacement value of the debtor's modular home is determined without regard for the additional costs of delivery and setup.[1]

Even after we disregard the costs of delivery and setup, the creditor's appraiser would set the value of the modular home at $28,400, a sum significantly higher than the debtor's proposed value of $19,500. Both appraisals have serious deficiencies. In his report, the creditor's remarketing manager provides no explanation for his assertion of a base value. Seeing no foundation for the creditor's estimate, the court rejects its conclusion. In contrast, the debtor's appraiser presents an acceptable methodology of analyzing comparable sales. The three comparable properties had an average adjusted sales price of $22,633. Nonetheless, without explanation, the debtor's appraiser suggests a reduction in value from that amount by more than $3,000. Finding no justification for this adjustment, the court will instead adopt the average adjusted sales price.

For the reasons stated herein, the value of the debtor's mobile home will be set at $22,633. Any additional issues relative to the debtors' Chapter 13 plan will be considered by the court at the adjourned hearing on confirmation.

So ordered.

---

1. This holding follows the approach adopted by bankruptcy courts in several other districts. *See In re Prewitt*, 552 B.R. 790 (Bankr.E.D.Texas 2015); *In re Gensler*, 2015 WL 6443513 (Bankr.D.N.M.2015); and *In re Fortenberry*, 2014 WL 7407515 (Bankr. S.D.Miss.2014).